## Burrell v. Bolling

*Crowell & Whitehead*, for plaintiff; *Carrol Caruthers*, for defendant.

COPELAND, P. J., October 2, 1933.—This action was one of trespass and was originally instituted before C. A. McGuire, a justice of the peace in and for the Borough of Manor, Westmoreland County, Pa., on September 30, 1929, to recover the sum of $85.60 for damages done to the plaintiff's Oakland automobile by reason of a collision between it and the defendant's automobile.

A hearing was regularly held before the justice of the peace, and on October 7, 1929, judgment was publicly given in favor of the plaintiff and against the defendant for the sum of $85.60 with costs of suit.

On October 14, 1929, the defendant took an appeal, giving recognizance in the sum of $150 for debt, interest, and costs that might be legally recovered against him. This appeal was filed in the prothonotary's office of Westmoreland County on October 17, 1929. On April 4, 1930, the plaintiff filed his statement of claim, and the case was placed on the issue docket on April 25, 1930.

The case, then having been regularly listed for trial, came on to be heard on March 28, 1933, with the result that the jury returned a verdict in favor of the plaintiff in the sum of $85.60.

A bill of costs in this case was filed and taxed at $81.02. As to this taxation of costs, an appeal was taken. The reasons set forth in the appeal are that the prothonotary in taxing the costs allowed the plaintiff to collect mileage for an

alleged service of a subpœna on a witness living in the State of Ohio, it being beyond the jurisdiction of this court, for service of such a subpœna would be without avail to compel the witness to attend; and that the prothonotary erred in taxing the plaintiff's fees for serving witnesses, it being the policy of the law that the plaintiff is not entitled to personal costs in any proceeding.

The question whether the prothonotary properly taxed the costs in this case is now before the court for disposition.

An examination of the authorities has failed to disclose any decision of our appellate courts on this question, and a further search of the authorities in this case has convinced us that the proposition is so elementary that it has never been seriously questioned before this time.

The Act of July 11, 1901, P. L. 663, sec. 1, provides, inter alia, as follows: "For serving personally or by copy, each writ of scire facias, replevin, foreign attachment, attachment, attachment execution, injunction, mandamus, quo warranto, partition, inquisition or other writ, each bill in equity, summons, rule, process, decree, order, citation, subpoena, subpoena in divorce, statement of claim, series of interrogatories, proclamation, or notice of any kind issued out of any court, one dollar for the first service, and fifty cents for every other defendant or other party served, and forty cents for each copy served or posted, in addition to mileage; or for serving the same by publication in one or more newspapers, when required by law or order of court, two dollars and seventy-five cents in each case, in addition to printer's bill."

This act is the authority under which fees for service of a subpœna are taxed and collected as costs in this proceeding. This act is interpreted to cover fees for service of subpœnas by a private citizen.

It was said by President Judge Rice in the case of Kottcamp v. York County (No. 1), 28 Pa. Superior Ct. 96, 98: "A constable cannot be compelled to serve a subpœna issued from the office of the prothonotary or of the clerk of the quarter sessions for the attendance of witnesses at court. He may do so, as, indeed, any private citizen may, but for such service he is entitled to the fee which the sheriff, or any person acting in his stead, is entitled to: McCallister v. Armstrong County, 9 Pa. Superior Ct. 423; O'Leary v. Northumberland Co., 24 Pa. Superior Ct. 24. The foregoing ruling was in accordance with a long line of reported decisions of the courts of common pleas of the state, beginning with Coleman v. Hess, 1 Browne's Reps. 274, decided in 1811."

Rule 80 of the Rules of the Court of Common Pleas of Westmoreland County provides as follows: "The affidavit of the party, his agent or attorney, attesting the correctness of the bill, and the attendance and materiality of the witnesses, shall be conclusive of all the facts in the bill filed, as well to the officers as to the court, on appeal, unless specially contradicted under oath."

In Wadlinger's Law of Costs, Pennsylvania, 60-61, it is said: "The affidavit at the foot of the bill [of costs] is *prima facie* evidence of its accuracy, until impeached".

In Kafroth v. Reading & Col. R. R. Co., 4 Lanc. Bar no. 13, it is said: "The practice is to take the affidavit of the party to the foot of the bill, for prima facie evidence of its accuracy. . . . If it be inaccurate, the *party alleging* inaccuracy *must show* it."

In the case of McWilliams v. Hopkins, 1 Wharton 276, 278, quoting from a per curiam opinion, it is said: "The practice is to take the affidavit of the party at the foot of the bill, for *prima facie* evidence of its accuracy; and the witnesses therefore need not have been produced."

The rule of the court referred to above means that, unless testimony is taken by the appellant tending to contradict the facts set forth in the bill of costs and

sworn to by the party filing the same or his agent or attorney, those facts must be taken as conclusively proven. In this case, as far as we are able to discover from this record, the appellant made no attempt before the prothonotary to introduce any testimony contradicting any of the facts set forth in the bill of costs, and therefore the bill must be taken as conclusive of the things it contains, under the authorities we have just cited.

The bill of costs in this case showing as it does that the plaintiff served his subpœna on the witness who lived outside of the State, the presumption is that the subpœna was served on this witness at the State line. If the appellant wished to dispute this fact he had an opportunity to do so before the prothonotary by following the plain provisions of rule 80 et seq. of the rules of Westmoreland County. Since he did not offer evidence to dispute this fact, the court must presume that he could not.

It was said by President Judge McMichael, in the case of Lyon v. Marshall, 1 Pa. C. C. 90, 91: "It is not necessary that an officer serve a subpœna. It is not directed to any officer, and may be served by any private person, as agent for the party, or by the party himself. The expenses of serving such subpœna, provided they do not exceed what the sheriff is entitled to charge for the services, are proper costs, to be recovered by the successful party.

"It has been the uniform, uninterrupted, universal custom, in this part of the state, to allow the party himself the same costs where he served the subpœna on his own witnesses, as he would have had to pay to procure its service."

In the case of Cody v. Clelam & Drury, 1 Pa. C. C. 8, 9, it was said by President Judge Church: "A party serving his own subpœna is entitled to his fees and mileage for such service. ([Carroll v. Petry] 15 W. N. C. 416, Carbon Common Pleas.) The contrary ruling is held in Philadelphia Common Pleas, in [Lee v. Culp] 13 W. N. C. 314, but no opinion or reason is given, and the principle in the text seems to me to be in accordance with common sense, with justice, and with a due regard to the prompt, speedy, and economical administration of justice. In [Horner v. Harrington] 6 Watts, 335, the supreme court have ruled as we have in the text."

Each one of these cases recognizes the principle that a party serving his own subpœna is entitled to fees and mileage for such service, and this in spite of the fact that in Pennsylvania a person may not tax witness fees and mileage for himself.

Of all the cases that we have examined upon the subject of costs, we could find none that allowed mileage to a person serving a writ or subpœna beyond the State line. In this case we are of the opinion that the plaintiff could not charge mileage beyond the State line in serving his own subpœna.

The prothonotary's disposition of the taxation of the costs, attached to the bill of costs in this case, stating the questions involved and the prothonotary's answers thereto, is as follows:

"There are two questions involved:

"1. D. H. Burrell is entitled to costs of serving witnesses and mileage because he is the party plaintiff to the suit.

"Answer: It has always been the practice in the prothonotary's office to allow anyone who serves a subpœna on witnesses, even although the party making the service be a party to the suit, the following expenses: $1 for the first witness served, 50 cents for each additional witness served, and 10 cents a mile for the actual miles traveled.

"2. Where the witness lives in Ashville, Ohio, and the plaintiff travels 192 miles each way to serve the witness, making a total of 384 miles traveled, and the witness is subpœnaed in Ashville, Ohio, and appears in court in response

212

thereto and testifies, is the party serving the subpœna entitled to 398 miles, or is party only entitled to 192 miles, being mileage to the State line and return; or is the party entitled to no mileage on the theory that, the witness not being subpœnaed within the State of Pennsylvania, no mileage can be charged at all.

"Answer: The party serving the subpœna is entitled to mileage to the State line and back to the place of starting in serving a subpœna on a witness residing outside the State who afterwards appears in response to the subpœna and testifies in court.

"J. ARTHUR THOMAS, Prothonotary".

The prothonotary's answers are proper in each instance and are in accord with the law as we find it, and the costs in this case should be accordingly taxed.

And now, to wit, October 2, 1933, after argument and after due and careful consideration, it is ordered, adjudged, and decreed that the prothonotary's taxation of the costs in this case be affirmed, and the appeal therefrom be and the same is hereby dismissed.    From William S. Rial, Greensburg, Pa.